FILED

JUL 3 1 2008

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT,
NORTHERN DISTRICT OF CALIFORNIA

# ATTACHMENT A

# S163408



SUPREME COURT
**FILED**

MAY − 8 2008

Frederick K. Ohlrich Clerk

_____
Deputy

IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

|  |  |
|---|---|
| In re the Matter of<br><br>**DANNY CAMEL,**<br><br>Petitioner,<br><br>On Habeas Corpus. | No._____<br><br>(Court of Appeal No.<br>H032404)<br><br>(Filed in Conjunction<br>with appeal in<br>H031384)<br><br>(Monterey County<br>Superior Court No.<br>SS40867A) |

## PETITIONER'S PETITION FOR REVIEW

### SIXTH DISTRICT APPELLATE PROGRAM

DALLAS SACHER
Assistant Director
State Bar #100175
100 N. Winchester Blvd., Suite 310
Santa Clara, CA 95050
(408) 241 -6171
DALLAS@SDAP.ORG

Attorneys for Petitioner,
Danny Camel

MAY 1 2 2008

## TABLE OF CONTENTS

ISSUES PRESENTED FOR REVIEW .......................... 1

REASONS FOR GRANTING REVIEW .......................... 1

STATEMENT OF THE CASE ................................ 3

STATEMENT OF FACTS .................................. 4

       Facts Relating To The Present Case ........................ 4

       Facts Regarding Petitioner's Criminal History ............... 5

       Facts Regarding Petitioner's Work History ................. 8

       Petitioner's Marital History ............................. 9

       Petitioner's Spiritual Awakening ......................... 9

       Facts Adduced On Habeas Corpus ........................ 10

I.    PETITIONER WAS DEPRIVED OF HIS SIXTH AND
      FOURTEENTH AMENDMENT RIGHT TO THE
      EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS
      ATTORNEY FAILED TO OBJECT TO THE TRIAL
      COURT'S ERRONEOUS VIEW THAT IT WOULD
      NECESSARILY ERR IF IT GRANTED THE
      *ROMERO* MOTION. ................................. 11

II.   PETITIONER WAS DEPRIVED OF HIS SIXTH AND
      FOURTEENTH AMENDMENT RIGHT TO THE
      EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS
      ATTORNEY FAILED TO PRESENT AVAILABLE
      EVIDENCE THAT PETITIONER WAS EMPLOYED
      BETWEEN 2001 AND 2003. ........................... 18

CONCLUSION ........................................ 21

# TABLE OF AUTHORITIES

## CASES

*People v. Carmony* (2004)
    33 Cal.4th 367 ........................................................................ 11,13,18

*People v. Garcia* (1999)
    20 Cal.4th 490 ............................................................................. 13,15

*People v. Scott* (1994)
    9 Cal.4th 331 ............................................................................... 11,16

*People v. Strong* (2001)
    87 Cal.App.4th 328 ............................................................................ 16

*People v. Superior Court (Romero)* (1996)
    13 Cal.4th 497 ............................. 1,2,3,4,11,12,13,15,16,17,18,19,20

*People v. Williams* (1998)
    17 Cal.4th 148 ............................................................................. 15,16

*Strickland v. Washington* (1984)
    466 U.S. 668 .............................................................................. 17,20

*Wiggins v. Smith* (2003)
    539 U.S. 510 .................................................................................... 19

## CONSTITUTIONS

United States Constitution
    Sixth Amendment ................................................................... 1,11,18
    Fourteenth Amendment .......................................................... 1,11,18

## STATUTES

Health and Safety Code
    Section 11352 ..................................................................................... 3

# TABLE OF AUTHORITIES (CONTINUED)

Penal Code
    Section 245, subdivision(a)(2) .......................................................... 8
    Section 667.5, subdivision(b) ........................................................... 3
    Section 1170.12 ................................................................................ 3
    Section 1385 .................................................................................... 4

IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

|  |  |
|---|---|
| In re the Matter of<br><br>**DANNY CAMEL,**<br><br>Petitioner,<br><br>On Habeas Corpus. | No._____<br><br>(Court of Appeal No. H032404)<br><br>(Filed in Conjunction with appeal in H031384)<br><br>(Monterey County Superior Court No. SS40867A) |

## ISSUES PRESENTED FOR REVIEW

I.     Was Petitioner Deprived Of The Effective Assistance Of Counsel Under The Sixth and Fourteenth Amendments To The Federal Constitution When His Attorney Failed To Object to The Trial Court's Erroneous View That It Would Necessarily Err If It Granted The Motion Made Pursuant To *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497?

II.    Was Petitioner Deprived Of The Effective Assistance Of Counsel Under the Sixth and Fourteenth Amendments To The Federal Constitution When His Attorney Failed To Present Available Evidence At the *Romero* Hearing That Petitioner Was Employed Between 2001 and 2003?

## REASONS FOR GRANTING REVIEW

Petitioner makes no claim that his case satisfies the criteria for a grant

of review.  However, it is equally true that a grave miscarriage of justice has been suffered by petitioner.  As a result, this court should direct the Court of Appeal to issue an order to show cause.

Petitioner was charged with two counts for the possession for sale and transportation of twelve grams of cocaine base.  Petitioner was eligible for a life sentence under the Three Strikes law due to two prior serious felony convictions.

Petitioner brought a motion pursuant to *People v. Superior Court (Romero)*, supra, 13 Cal.4th 497.  In his motion, petitioner made a compelling showing that he was entitled to relief in light of several factors: (1) he is not a career criminal insofar as there were substantial periods of his life where he was law abiding; (2) he has a solid work history; and (3) he has an intact and supportive family.  Notwithstanding this showing, the trial court denied the motion on the erroneous grounds that it would necessarily be an abuse of discretion to grant the motion.  Unfortunately, petitioner's attorney failed to render an objection.  As a result, petitioner was deprived of the effective assistance of counsel.

Petitioner's trial attorney also made a second significant error. Petitioner was released from prison in 2001.  Between 2001 and his arrest in this case in February 2004, petitioner had a substantial work record.

-2-

However, counsel failed to present available documentary evidence which would have supported this fact. This omission was highly prejudicial since it would have shown the court that petitioner is the type of person whose future prospects warrant a grant of *Romero* relief.

Petitioner is not the type of person who should be serving a life sentence for a non-violent drug offense. An order to show cause should issue so that petitioner's case may be more fully examined by a lower court.

### STATEMENT OF THE CASE

On February 23, 2004, petitioner was charged in a complaint filed in the Superior Court for Monterey County. (CT 1-4.)[1] In count 1, petitioner was charged with the transportation of cocaine base (Health and Safety Code section 11352). (CT 1.) In Count 2, petitioner was charged with the possession of cocaine base for the purpose of sale (Health and Safety Code section 11351.5). (CT 2.) It was also alleged that petitioner had two serious felony priors (Penal Code section 1170.12) and two prison priors (Penal Code section 667.5, subd. (b)). (CT 2-3.)

On September 14, 2006, petitioner entered a guilty plea to the possession for sale charge. (CT 41.) Petitioner also admitted the strike and

---

[1]The record references are to the record on appeal in H031384. The record is before this court with regard to the petition for review in H031384.

-3-

prison priors. (CT 41.)

On January 18, 2007, petitioner filed a motion pursuant to *People v. Superior Court (Romero)*, supra, 13 Cal.4th 497 in which he sought the dismissal of his strike priors. (CT 68-84.) On January 22, 2007, the People filed an opposition to the motion. (CT 85-156.)

On January 25, 2007, the sentencing hearing was held. (CT 157.) The court denied the *Romero* motion. (CT 157.) The court imposed a sentence of 25 years to life for the possession for sale conviction. (CT 157.) On the People's motion, the prison priors were dismissed pursuant to Penal Code section 1385. (CT 157.)

On December 18, 2007, petitioner filed a petition for writ of habeas corpus in the Court of Appeal in conjunction with his appeal in H031384. On April 2, 2008, the judgment was affirmed in H031384. On the same date, the habeas petition was summarily denied. (Exhibit A to this petition.)

## STATEMENT OF FACTS

### Facts Relating To The Present Case

On February 20, 2004, petitioner was on parole. (CT 46.) Acting on confidential information that petitioner was selling cocaine base, parole agent Kelvin Brown directed petitioner to report to the parole office. (CT 46.)

Upon petitioner's arrival at the parole office, his vehicle was searched

-4-

by a canine unit. (CT 47.) The canine unit "hit" on a spray canister. (CT 47.) A search of the canister revealed that it contained twelve grams of cocaine base. (CT 47.) The cocaine base was "parceled into small pieces of equal size. . . ." (CT 47.)

A further search of the vehicle yielded $1100 which was divided into groupings of $100 each. (CT 47.) Inside the glove box, the police found "a piece of paper containing markings that appeared consistent with 'buy and owe sheets. . . .'" (CT 47.)

After waiving his *Miranda* rights, petitioner admitted possession of the narcotics. (CT 48.) Petitioner indicated that the drugs were possessed for his own personal use. (CT 48.) Petitioner denied any knowledge of the "pay-owe" sheet. (CT 48.) He indicated that he had received the $1100 from his girlfriend who had just cashed an income tax refund check. (CT 48.)

While awaiting trial, petitioner was mistakenly released from jail even though he had not posted bail. (CT 49.) After being at large for over sixteen months, petitioner voluntarily surrendered. (CT 49.)

### Facts Regarding Petitioner's Criminal History

Petitioner was born on February 17, 1967. (CT 142.) As a juvenile, petitioner committed criminal acts of receiving stolen property and vehicle theft. (CT 132.) Petitioner was committed to the Youth Authority when he

-5-

was 16. (CT 132.)

As an adult, petitioner was convicted of theft in 1985. (CT 132.) The punishment consisted solely of a fine. (CT 132.)

In 1989, petitioner's brother, Andre, was murdered. (CT 131.) Although the record is less than clear on this point, Garin Brown was apparently involved in Andre's demise. (CT 132, 134.)

On the evening of August 18, 1989, petitioner was in the company of his brother, Johnny, his cousin, Clinton Jackson and Edward McFarland. (CT 128-130.) While visiting a bowling alley, the group saw Mr. Brown. (CT 128.)

Several hours later, Mr. Brown was shot in an alley. (CT 128.) According to Mr. Jackson's account to the police, petitioner and Mr. McFarland were the shooters. (CT 129-130.) However, Johnny Camel confessed to the police that he was a shooter. (CT 130.) For his part, petitioner admitted that he had participated in the crime. (CT 132.) As a result of the shooting, Mr. Brown was paralyzed from the waist down. (CT 131.)

Petitioner entered a guilty plea to attempted second degree murder. (CT 139.) Although the information alleged that petitioner had personally used a firearm, the enhancement was dismissed with a *Harvey* waiver. (CT

-6-

125.) Petitioner was sentenced to 9 years in prison. (CT 139.) Petitioner was released from prison in April 1994. (CT 138.)

In June 1995, petitioner suffered a conviction for trespassing and was granted probation. (CT 52.) In November 1995, petitioner suffered a conviction for possessing marijuana in a motor vehicle. (CT 52.) A fine was imposed. (CT 52.)

On March 17, 1999, approached Michael Jackson and exchanged greetings. (CT 143.) Sensing that "something was wrong," Mr. Jackson turned and ran. (CT 143.) According to Mr. Jackson, five to six shots were fired at him. (CT 143.)

Mr. Jackson had been a witness to the 1989 shooting which had resulted in petitioner's prison commitment. (CT 144.) However, Mr. Jackson did not assist the prosecution since he left the state. (CT 144.)

Petitioner admitted that he had fired shots. (CT 145.) However, he denied that he had tried to hit Mr. Jackson. (RT 145-146.) He intended to scare Mr. Jackson since Mr. Jackson had tried to intimidate him by mentioning the name of Tony Jacobs. (CT 145.) The use of Mr. Jacob's name was intimidating since he was "the type of person that has killed people in the past." (CT 145.)

Petitioner was charged with attempted murder. (CT 142.) Pursuant to

-7-

a plea bargain, petitioner pled guilty to assault with a firearm pursuant to Penal Code section 245, subdivision (a)(2). (CT 142.) Petitioner was sentenced to four years in prison. (CT 100.) Petitioner was paroled in 2001 and did not suffer any new convictions until the instant offense. (CT 52.)

## Facts Regarding Petitioner's Work History

Petitioner began working in 1980 when he was 13 years old. (CT 142, 148.) Between September 1985 and February 1986, petitioner worked as a dishwasher. (CT 133.) He then worked at Day's Inn as a utility worker until December 1986. (CT 133.) From January 1987 until his arrest in 1989, petitioner worked in the warehouse at Hillside Coffee. (CT 133.)

Following his release from prison, petitioner resumed his hard working lifestyle. From 1996 to 1997, he worked as a laborer for Gaicalone Electric. (CT 149.) Subsequently, he worked as a laborer for Henkel and McCoy's and Granite Construction until the time of his arrest in 1999. (CT 148.)

With regard to petitioner's most recent work history, the record on appeal is unclear. The probation report indicates that state "parole records" revealed that petitioner "had no reported employment." (CT 54.) However, in a letter to the sentencing judge, petitioner stated that he had worked since the age of 13 and "my last employer is Local No. 297 as a construction laborer." (CT 61.)

-8-

## Petitioner's Marital History

Petitioner married Virginia Ortiz in 1990. (CT 54.) The couple has three children aged 8, 12 and 19. (CT 54.) The oldest child was an honor roll student in high school with a 4.0 average. (RT 262.)

At the time of his arrest, petitioner and his wife were separated and he was living with his girlfriend. (CT 47.) However, on the very day of his arrest, petitioner had given his wife $500 for the monthly bills. (CT 47.)

By the time of the sentencing hearing, petitioner and his wife had reconciled. Ms. Ortiz appeared at the sentencing hearing and made the following statement on petitioner's behalf:

> "He has changed, and I just wanted to make that point, because I know he's been in trouble in the past with the law. And I've never spoken on his behalf on any other time, because I didn't believe, you know, that he was a changed person. I do, now, believe that. He has proven to me that he has changed, and he's a good guy and, I'm just asking for leniency towards him." (RT 265.)

## Petitioner's Spiritual Awakening

Petitioner submitted several letters which indicated that he had undertaken a spiritual awakening following his arrest. (CT 75-78, 80.) Reverend Fred Holt advised the court that petitioner was the "most concerned Bible student" that he had "taught in a long time." (CT 75.) Similarly, ML Booker indicated that petitioner had shown sincere "spiritual consistency and

-9-

remorse towards" his past criminal behavior. (CT 76.) Elder Steve Lattimore
concurred in this view. (CT 78.)

### Facts Adduced On Habeas Corpus

Petitioner was released from prison in 2001. Between June 2001 and
January 2002, petitioner was employed as a laborer through Union Local No.
297. (Exhibit A.)[2] During this time, petitioner largely worked full-time.
(Exhibit A.)

During the months of June 2002 to August 2002, petitioner was again
employed as a laborer with Union Local No. 297. (Exhibit A.) Petitioner
largely worked full-time during this period. (Exhibit A.)

From March 2003 to July 2003, petitioner was employed as an in-home
aide for disabled people. (Exhibit A.) In the months of October 2003 to
December 2003, petitioner was occasionally employed through Union Local
No. 297. (Exhibit A.)

///

///

///

///

_____

[2]Exhibits A and B refer to the exhibits submitted in the Court of
Appeal.

I.

PETITIONER WAS DEPRIVED OF HIS SIXTH AND FOURTEENTH AMENDMENT RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS ATTORNEY FAILED TO OBJECT TO THE TRIAL COURT'S ERRONEOUS VIEW THAT IT WOULD NECESSARILY ERR IF IT GRANTED THE *ROMERO* MOTION.

Defense counsel has the duty to promote the "proper application" of the sentencing laws. (*People v. Scott* (1994) 9 Cal.4th 331, 351.) The failure to do so constitutes ineffective assistance. (*Ibid.*) In this case, counsel erred when he failed to object to the trial court's erroneous understanding of its power under *People v. Superior Court (Romero)*, supra, 13 Cal.4th 497.

As is well settled, the proper resolution of a *Romero* motion required the trial court to "'consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies.' [Citation.]." (*People v. Carmony* (2004) 33 Cal.4th 367, 377.)

Petitioner made a compelling showing that he fell outside the spirit of the Three Strikes scheme due to his "background, character, and prospects."

-11-

Specifically, petitioner established that he had spent long periods of his life during which he worked hard as a productive member of society. Starting at the age of 13 in 1980, petitioner worked at various jobs until his incarceration in 1989. (CT 133, 142, 148.) Then, following his release from prison in 1994, petitioner once again held a variety of jobs until his next incarceration in 1999. (CT 148-149.) Finally, petitioner worked as a union member following his 2001 release from prison. (CT 61.)

Aside from his extensive work history, petitioner also demonstrated that he had the support of his wife and family. Although petitioner and his wife had previously separated, they were together at the time of the sentencing hearing and petitioner's wife indicated that she had seen a positive change in him. (RT 265.)

In addition, several people stepped forward to praise petitioner for his new found devotion to his religion. (CT 75-78, 80.) In particular, Reverend Fred Holt informed the court that petitioner was the "most concerned Bible student" that he had "taught in a long time." (CT 75.)

Notwithstanding the foregoing showing, the trial court believed that the Court of Appeal would necessarily reverse any grant of *Romero* relief. (RT 287.) This belief is incorrect.

In reviewing a trial court's grant of *Romero* relief, an appellate court

-12-

is required to apply a deferential standard of review. (*People v. Garcia* (1999) 20 Cal.4th 490, 503.) A grant of relief cannot be reversed unless the trial court's ruling " ' "falls outside the bounds of reason " ' " under the criteria specified by the Supreme Court. (*Ibid.*) In this case, a granting of partial *Romero* relief (i.e. a reduction to a two strikes sentence) would not have been outside the bounds of reason.

In assessing the merit of a *Romero* motion, the trial court is required to consider essentially three factors: (1) the nature of petitioner's criminal history; (2) the nature of the present offense; and (3) petitioner's character and future prospects. (*People v. Carmony*, supra, 33 Cal.4th 367, 377.) In this case, the record yields an ample basis on which *Romero* relief might be granted.

As was set forth above, petitioner has spent substantial periods of his life in a productive fashion. He has held a myriad of jobs and he has been able to stay married and raise several children. Going forward, petitioner will have the strength and guidance which he has gained from his spiritual awakening. Most importantly, petitioner's wife is certain that he has turned a corner and will be a good man. (RT 265.)

On the down side, it is certainly true that petitioner's strike priors were very serious in nature. In the attempted murder case, the victim was shot and

-13-

paralyzed. In the assault with a firearm case, petitioner fired a number of shots. However, these adverse facts cannot be viewed in isolation.

The victim of the attempted murder had himself apparently had some involvement in the earlier murder of petitioner's brother. (CT 132, 134.) In addition, the victim in the assault case had made threatening comments to petitioner. (CT 145.) While these circumstances do not excuse petitioner's criminal conduct, they do serve to demonstrate a certain degree of mitigation. Indeed, the assault conviction was deemed to be sufficiently mitigated such that the District Attorney dismissed a charge of attempted murder and the court imposed a prison term of only four years. (CT 100, 142.)

Aside from his strike priors, petitioner has had a minimal criminal history involving minor crimes which did not warrant incarceration. Thus, petitioner is not a career criminal in the sense that there have been substantial periods of time during which he has not engaged in serious criminal conduct.

As for the present offense, petitioner concedes that the possession for sale of 12 grams of cocaine base is not a trivial crime. However, neither is it a serious nor violent felony. Rather, within the range of the customary sentences imposed in California, a 10 or 12 year term for the offense would not be unusual in light of petitioner's record.

The foregoing survey of petitioner's character and criminal history

-14-

yields a simple reality: The trial court had ample grounds on which it could have dismissed a single strike prior and imposed a two strikes sentence. Given petitioner's strong work history and prospects for a grounded spiritual family life, the granting of *Romero* relief would not have constituted an exercise of discretion beyond the "bounds of reason." (*Garcia*, supra, 20 Cal.4th 490, 503.) Thus, the trial court erred in believing that it could not legally grant *Romero* relief.

In support of this conclusion, it is instructive to examine a case where an abuse of discretion in granting relief was found. In *People v. Williams* (1998) 17 Cal.4th 148, the 32 year old defendant was convicted of driving under the influence of PCP. The defendant had strike priors for rape and attempted robbery. He had also suffered a number of convictions which led to at least two prison terms unrelated to his strike priors. In addition to his frequent periods of incarceration, the defendant was unemployed and did not seek treatment for his substance abuse problem. On this record, the Supreme Court concluded that it was an abuse of discretion to grant *Romero* relief since the defendant had largely been incarcerated for the entirety of his adult life and had done nothing productive during that time. (*Id.* at pp. 163-164.)

Plainly, the case at bar is materially different from *Williams*. Here, petitioner has spent significant periods of his adult life in a productive fashion

-15-

and without resort to serious criminal behavior. Thus, petitioner is not a career criminal as was the defendant in *Williams*.

It is likely that the People will cite a series of Court of Appeal opinions where grants of *Romero* relief were reversed. (See *People v. Strong* (2001) 87 Cal.App.4th 328, 338-339 and cases cited therein.) It is sufficient to note that each of these cases involved "defendants with a long and continuous criminal career. [Citations.]" (*Id.* at p. 338.) This circumstance does not exist here.

As has already been discussed, petitioner is not a career criminal. Other than the prison sentences attendant to his strike priors, petitioner has not suffered a criminal conviction which warranted incarceration. Given the several periods of petitioner's life where he was a useful member of society, the instant trial court would not have abused its discretion in granting *Romero* relief.

From what has already been said, it is manifest that trial counsel erred when he failed to object to the trial court's stated view that it had no power to grant *Romero* relief. It is defense counsel's duty to promote the "proper application" of the sentencing laws. (*People v. Scott*, supra, 9 Cal.4th 331, 351.) Here, counsel most assuredly failed to apprise the court of the true state of the law.

-16-

The remaining question is whether counsel's error is prejudicial. Under *Strickland v. Washington* (1984) 466 U.S. 668, an error made by defense counsel will require reversal when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Id.* at p. 694.) Importantly, this test does not require the defendant to show "that counsel's deficient conduct more likely than not altered the outcome in the case." (*Id.* at p. 693.) Rather, the defense need only show that counsel's error was "sufficient to undermine confidence in the outcome" of the trial court proceedings. (*Id.* at p. 694.) In the case at bar, reversal is compelled.

The record contains ample evidence which would have justified the dismissal of one of petitioner's two strike priors. Such a ruling would not have constituted an abuse of discretion. Nonetheless, the trial court precluded itself from reaching this result by erroneously believing that a grant of relief could not be lawfully made. Under these circumstances, this court can have no "confidence" that the trial court would have denied the motion were it aware of the true scope of its authority. (*Strickland*, supra, 466 U.S. at p. 694.)

It is reasonable to conclude that trial counsel's error led to the denial of the *Romero* motion. The case should be remanded so that a new sentencing

hearing may be held.

II.

PETITIONER WAS DEPRIVED OF HIS SIXTH AND
FOURTEENTH AMENDMENT RIGHT TO THE
EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS
ATTORNEY FAILED TO PRESENT AVAILABLE
EVIDENCE THAT PETITIONER WAS EMPLOYED
BETWEEN 2001 AND 2003.

As was discussed above, one of the primary factors in a proper *Romero*

analysis is a consideration of the defendant's background, character and

prospects. (*People v. Carmony*, supra, 33 Cal.4th 367, 377.) Obviously, a

defendant's work history is a relevant factor regarding his prospects going

forward.

The record before the trial court established that petitioner had a strong

work history from 1980 through his incarceration in 1999. (CT 133, 142,

148-149.) However, there was very little information presented concerning

petitioner's work history following his release from prison in 2001. Although

petitioner told the court that his last employment was as a construction laborer,

the probation report indicates "that at the time of his arrest, the defendant had

no reported employment." (CT 54, 61.) In fact, there was considerable

available evidence that petitioner had employment between 2001 and his

arrest in February 2004.

It is defense counsel's obligation to present evidence which will

-18-

advance the defendant's cause. (*Wiggins v. Smith* (2003) 539 U.S. 510, 534-535.) Here, defense counsel dropped the ball by failing to introduce evidence of petitioner's most recent work history.

As is revealed by the exhibits submitted in the Court of Appeal, petitioner was fully employed during 2001 and worked as many as 268 hours in a single month. (Exhibits A and B.) In 2002, petitioner did not work nearly as much. However, during the three month period from June to August 2002, petitioner worked 470 hours. (Exhibits A and B.) In 2003, petitioner worked for a four month period as an in-home aide and was employed for a few days through his union. (Exhibits A and B.)

The omitted information is significant. Although the probation report essentially advised the court that petitioner was not employed prior to his February 2004 arrest, the truth is that petitioner was working to some degree. Obviously, this evidence would have demonstrated that petitioner had better "prospects" than otherwise appeared to the court. Defense counsel should certainly have presented this evidence.

In his comments at the *Romero* hearing, defense counsel briefly mentioned that petitioner "was getting work from the [union] hall and/or he was on unemployment" prior to his arrest on the present case. (RT 278.) However, this brief reference was unsupported by any documentation. Thus,

-19-

it is reasonable to conclude that the court relied on the probation officer's indication that petitioner had no present employment. (CT 54.)

Counsel's error was prejudicial. In denying the *Romero* motion, the court specifically noted that petitioner had failed to produce "a letter from the [sic] employer that said, you know, he's been successful . . . ." (RT 286.) Thus, the record yields the clear inference that the court may well have been swayed by evidence that petitioner was working in the years immediately prior to his present conviction.

Petitioner is not a career criminal nor has he failed to engage in socially useful activity. Although the court was led to believe that petitioner had not worked after his 2001 release from prison, the truth is that petitioner procured lawful employment during the period prior to his arrest. It is reasonably probable that *Romero* relief would have been granted if the court had received a complete picture concerning petitioner's employment history. (*Strickland v. Washington*, supra, 466 U.S. 668, 694.)

///

///

///

///

///

-20-

## CONCLUSION

For the reasons expressed above, review should be granted with

directions to the Court of Appeal to issue an order to show cause.

Dated: May  6 , 2008                    Respectfully submitted,

DALLAS SACHER
Attorney for Petitioner,
Danny Camel

## CERTIFICATE OF COUNSEL

I certify that this petition contains 4134 words.

Dated: May __6__ , 2008

DALLAS SACHER
Attorney for Petitioner,
Danny Camel

# Exhibit A

COPY

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

Court of Appeal · Sixth App. Dist.

SIXTH APPELLATE DISTRICT

FILED

APR 2 - 2008

MICHAEL J. YEHLY, Clerk

By _____
                                      DEPUTY

In re DANNY CAMEL,

on Habeas Corpus.

H032404

( Monterey County
Super.Ct.No. SS40867)

BY THE COURT:

The petition for writ of habeas corpus is denied, the denial to become effective

upon the finality of our decision on defendant's appeal. (See Cal. Rules of Court, rule

8.264(b)(4).)

RECEIVED

APR 0 3 2008

S•D•A•P

(Mihara, Acting P.J., McAdams, J., and Duffy, J. participated in this decision.)

Dated _____APR 2 - 2008_____        _____MIHARA, J._____ Acting P.J.

# PROOF OF SERVICE

I declare that I am over the age of 18, not a party to this action and my business address is 100 N. Winchester Blvd., Suite 310, Santa Clara, California 95050. On the date shown below, I served the within *PETITIONER'S PETITION FOR REVIEW* to the following parties hereinafter named by:

X     Placing a true copy thereof, enclosed in a sealed envelope with postage thereon fully prepaid, in the United States mail at Santa Clara, California, addressed as follows:

Karen Z. Bovarnick, Esq.
Office of the Attorney General
455 Golden Gate Avenue
Suite 11,000
San Francisco, CA 94102-7004
[attorney for respondent]

Court of Appeal
333 W. Santa Clara Street
Suite 1060, 10th Floor
San Jose, CA 95113

District Attorney's Office
P. O. Box 1131
Salinas, CA 93902

Superior Court Clerk
Criminal Division
240 Church Street, Room 318
Salinas, CA 93902

Danny Camel
F-64835
A4-211UP
Centinela State Prison
P.O. Box 901
Imperial, CA 92251

I declare, under penalty of perjury the foregoing is true and correct. Executed this ___ day of May, 2008, at Santa Clara, California.

Priscilla A. O'Harra

-23-

# ATTACHMENT B

**COPY**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

Court of Appeal · Sixth App. Dist.

SIXTH APPELLATE DISTRICT

**F I L E D**

APR 2 - 2008

MICHAEL J. YERLY, Clerk

By ――――――――
          DEPUTY

In re DANNY CAMEL,

on Habeas Corpus.

H032404
( **Monterey County**
Super.Ct.No. SS40867)

BY THE COURT:

    The petition for writ of habeas corpus is denied, the denial to become effective

upon the finality of our decision on defendant's appeal. (See Cal. Rules of Court, rule

8.264(b)(4).)

RECEIVED

APR 0 3 2008

S•D•A•P

(Mihara, Acting P.J., McAdams, J., and Duffy, J. participated in this decision.)

Dated      APR 2 - 2008          **MIHARA, J.**     Acting P.J.

# **ATTACHMENT C**

Court of Appeal, Sixth Appellate District - No. H032404
**S163408**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

In re DANNY CAMEL on Habeas Corpus

The petition for review is denied.

George, C.J. and Corrigan, J., were absent and did not participate.

SUPREME COURT
**FILED**

JUN 2 5 2008

Frederick K. Ohlrich Clerk

Deputy

**CHIN**

Acting Chief Justice

RECEIVED

JUN 26 2008

S•D•A•P